Filed 8/12/24

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H051258 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. C1761121) |
| v. | |
| JACK ESPINO, | |
| Defendant and Appellant. | |

This case raises a difficult question concerning resentencing under Penal Code section 1172.75. (Subsequent undesignated statutory references are to the Penal Code.) Under that section, inmates with sentences containing enhancements for serving prior felony prison terms—that is, prison priors—that are now invalid are entitled to full resentencing. Jack Espino petitioned for resentencing under section 1172.75 because his sentence includes a now-invalid prison prior. However, the trial court denied Espino resentencing because, while the sentencing court imposed a prison prior, rather than executing the prior, the sentencing court struck the punishment for it.

A number of published decisions have considered whether section 1172.75 applies where a now-invalid prison prior was imposed but stayed rather than executed. All but one has rejected the argument, advanced by the Attorney General here, that section 1172.75 applies only to now-invalid prison priors that were both imposed and

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part II.B.

executed. We conclude that there is no persuasive reason to depart from this view, which is based on the ordinary meaning of the word "imposed," and that section 1172.75 should be interpreted to apply whenever a prison prior was imposed, whether punishment was executed, stayed, or struck.

The Attorney General also contends that, if Espino is resentenced and his sentence is reduced, the prosecution is entitled to withdraw from its plea agreement with Espino. We reject this contention.

Accordingly, we reverse the judgment and remand with directions to conduct a full resentencing.

## I. BACKGROUND

In 2017, pursuant to a plea agreement, Espino pleaded no contest to robbery (§§ 211, 212.5, subd. (c)), possession of a firearm by a felon (§ 29800, subd. (a)(1)), and dissuading a witness (§ 136.1, subd. (c)(1)). Even more pertinently, Espino also admitted to allegations concerning several sentencing enhancements, including one under § 667.5, subdivision (b) for serving a prior prison term for vehicle theft (Veh. Code, § 10851). In the plea agreement, the parties stipulated to a prison sentence of 26 years, four months, and the sentencing court sentenced Espino to that term. At the sentencing hearing, the court imposed a prison prior, but stated that it was "striking that additional punishment."

In May 2023, in light of the intervening enactment of what is now section 1172.75, Espino petitioned for resentencing. Espino asserted that a now-invalid prison prior had been imposed on him and, in light of that prison prior, requested recall of his sentence and a full resentencing. The trial court denied Espino's petition. The court ruled that section 1172.75 applies only if "a section 667.5(b) enhancement was imposed and executed" and therefore does not apply if "the punishment for the section 667.5(b) enhancement was stayed, stricken, or dismissed." In reaching this conclusion, the trial court observed that the word "impose" is sometimes used as a shorthand to refer to enhancements that "were imposed and *executed*," and it reasoned that section 1172.75

2

used the word in this manner because section 1172.75, subdivision (d)(1) generally requires resentencing to yield a lesser sentence and because the stated intent of section 1172.75 is to benefit individuals currently serving sentences for repealed sentencing enhancements.

Espino timely noticed an appeal.

## II. DISCUSSION

### A. Resentencing

Espino contends that the trial court misconstrued section 1172.75. He argues that a prison prior is "imposed" under this section whenever it is included in a judgment without regard to whether punishment is executed, stayed, or struck. The Attorney General argues that section 1172.75 applies only to prison priors that were both imposed and executed. Reviewing this question of statutory interpretation de novo (*People v. Renteria* (2023) 96 Cal.App.5th 1276, 1281-1282 (*Renteria*)), we conclude that section 1172.75 should be interpreted according to the ordinary meaning of the word "impose" and therefore applies whenever a prison prior is included in a judgment, whether the prior is executed, stayed, or punishment is struck.

#### 1. Statutory Background

Prison priors are governed by section 667.5. When first enacted in 1976, this section required trial courts to impose a one-year enhancement for any non-violent felony for which a prison sentence was imposed, unless the defendant remained free of custody for at least five years after completing that sentence. (Stats.1976, ch. 1139, § 268 [former § 667.5, subd. (b)]; see also Stats. 2011, ch. 15, § 442 [extending section 667.5, subd. (b) to include sentences of imprisonment in a county jail for more than one year].) In 2019, the Legislature fundamentally changed section 667.5. Effective January 1, 2020, it amended the section to eliminate prison priors for all crimes except sexually violent offenses. (Stats. 2019, ch. 590, § 1.)

3

In Senate Bill No. 483 (2021-2022 Sess.) (Sen. Bill 483), the Legislature made this change retroactive. (Stats. 2021, ch. 728, § 3.)  In what is now section 1172.75 (Stats. 2022, ch. 58, § 12), the Legislature rendered any prison prior that was imposed before 2020, and was not for a sexually violent offense, invalid:  "Any sentence enhancement that was imposed prior to January 1, 2020, pursuant to subdivision (b) of Section 667.5, except for any enhancement imposed for a prior conviction for a sexually violent offense . . . [,] is legally invalid."  (§ 1172.75, subd. (a).)

In addition, section 1172.75 requires full resentencing where now-invalid enhancements were imposed.  Indeed, section 1172.75 requires the Secretary of the Department of Corrections and Rehabilitation to identify any individual in custody "currently serving a term for a judgment that includes an enhancement described in subdivision (a)."  (§ 1172.75, subd. (b).)  Upon receiving this information, the court that sentenced the individual is required to verify that "the current judgment includes a sentencing enhancement described in subdivision (a)."  (§ 1172.75, subd. (c).) If the sentencing court verifies that the individual's judgment includes a now-invalid prison prior, the court is required to recall the sentence and resentence the individual (*ibid.*), giving priority to those individuals who are "currently serving a sentence based on the [prison prior] enhancement."  (§ 1172.75, subd. (c)(1).)  Such resentencing must apply any changes in the law reducing sentences or providing judicial discretion.  (§ 1172.75, subd. (d)(2).)  And the resentencing must result in a "lesser sentence" unless a lesser sentence would endanger public safety.  (§ 1172.75, subd. (d)(1).)

### 2.  *The Word "Impose"*

Although section 1172.75, subdivision (a) states that "[a]ny sentence enhancement that was imposed" for a prison prior for crimes other than sexually violent offenses is invalid, the Attorney General contends that section 1172.75 does not apply to all prison priors imposed for such crimes.  Instead, the Attorney General contends that section 1172.75 applies only to prison priors that were both imposed and executed.

4

Although no published decision appears to have addressed whether section 1172.75 requires resentencing where, as here, a prison prior was imposed but punishment was struck, a number have considered what the word "impose" means in connection with prison priors that were imposed but stayed. Most have rejected the execution requirement that the Attorney General urges us to adopt and instead interpreted the word "impose" according to its ordinary meaning. We see no persuasive reason to take a different approach.

The first decision to consider the Attorney General's implied execution requirement was from this district, and it rejected the requirement. (See *Renteria*, *supra*, 96 Cal.App.5th at pp. 1282–1283.) Subsequent decisions from the Third, Fourth and Fifth Districts have agreed. (*People v. Mayberry* (2024) 102 Cal.App.5th 665, 673-676 (*Mayberry*) [Fifth District]; *People v. Saldana* (2023) 97 Cal.App.5th 1270, 1272–1273, review granted March 12, 2024, S283547 (*Saldana*) [Third District]; *People v. Christianson* (2023) 97 Cal.App.5th 300, 314, review granted Feb. 21, 2024, S283189 (*Christianson*) [Fourth District].) One published decision, from Division Two of the Fourth District, disagreed. (*People v. Rhodius* (2023) 97 Cal.App.5th 38, 40-41, 45, 48–49, review granted Feb. 21, 2024, S283169 (*Rhodius*).) The Supreme Court has granted review of this decision and two of the decisions taking the opposite view. (*Rhodius*, *supra*, 97 Cal.App.5th 38; *Christianson, supra*, 97 Cal.App.5th 300; *Saldana*, *supra*, 97 Cal.App.5th 1270.)

We see no good reason to reject the weight of authority interpreting section 1172.75 and imply an execution requirement into the word "impose." In interpreting statutes, our fundamental task is " ' " 'to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute.' " ' " (*People v. Blackburn* (2015) 61 Cal.4th 1113, 1123.) In doing this, "[w]e begin with the text, 'giv[ing] the words their usual and ordinary meaning [citation], while construing them in light of the statute as a whole and the statute's purpose' [citation]." (*Ibid.*; see also *People v. Vidana*

5

(2016) 1 Cal.5th 632, 638 [" 'Ordinarily, the words of the statute are the most reliable indication of legislative intent.' "].)  In the context of an obligation or penalty, the ordinary and usual meaning of the word "impose" is "to make, frame, or apply (as a charge, tax, obligation, rule, penalty) as compulsory, obligatory or enforce[ea]ble." (Webster's 3d New Internat. Dict. (1993) p. 1136, col. 1; see also American Heritage Dict. (5th ed. 2011) p. 883, col. 2 [defining "impose" to mean "establish or apply as compulsory" or "bring about by authority or force"].)  As a consequence, under section 1172.75, subdivision (a), "[a]ny sentence enhancement that was imposed" is naturally understood to mean any enhancement that the sentencing court included in a judgment, whether punishment for it was executed, stayed, or struck.

As the Attorney General points out, the word "impose" is often "employed as shorthand" to refer to enhancements that are both imposed and executed.  (*People v. Gonzalez* (2008) 43 Cal.4th 1118, 1125 (*Gonzalez*.)  Thus, where the context shows that "impose" refers to a term of imprisonment—as in the firearm enhancement statute, which states that "[o]nly one additional term of imprisonment under this section shall be imposed" on a person for each crime (§ 12022.53, subd. (f))—it is interpreted to be a shorthand for enhancements that are both imposed and executed.  (*Gonzalez*, *supra*, at pp. 1126-1127.)  Section 1172.75, however, does not refer to imposition of a term of imprisonment.  To the contrary, it refers to "[a]*ny* sentence enhancement that was imposed" (§ 1172.75, subd. (a), italics added), which suggests that the Legislature intended to use the word "imposed" in a broad sense.  Moreover, the Penal Code expressly authorizes courts to "strike the additional punishment for [an] enhancement" where doing so would be in furtherance of justice.  (§ 1385, subd. (b)(1).)  Thus, according to the Penal Code, a sentencing enhancement remains an enhancement even if the punishment for it was not executed, and nothing about the language accompanying the word "impose" in section 1172.75 suggests that it was being used as a shorthand to refer to prison priors that were imposed and executed.

The Attorney General notes that section 1172.75 generally requires resentencing to "result in a lesser sentence than the one originally imposed" (§ 1172.75, subd. (d)(1)) and argues that a sentence for an enhancement cannot be reduced if punishment for it was stricken. Multiple decisions have considered and rejected this argument. (*Mayberry*, *supra*, 102 Cal.App.5th at pp. 673-676; *Saldana*, *supra*, 97 Cal.App.5th at p. 1278, rev.gr.; *Christianson*, *supra*, 97 Cal.App.5th at p. 312, rev.gr.) As these decisions recognize, even when punishment for an enhancement is stayed, the enhancement carries "the potential for an increased sentence in certain circumstances, and removal of the stayed enhancement does provide some relief to the defendant by eliminating that potential." (*Christianson*, *supra*, at p. 312.) When a prison prior or other enhancement is imposed but stayed, the trial court retains the ability under certain circumstances to lift the stay on prison priors that were imposed but stayed and execute the stayed term. (*Ibid*.; see also *Mayberry*, *supra*, at p. 674 ["Imposed-but-stayed prison prior term enhancements carry the possibility of execution."]; *Saldana*, *supra*, at p. 1278 ["The presence of a stayed term or enhancement is not without significance; it is part of the sentence and remains available if its execution becomes necessary and proper for any legally sanctioned reason."].) Thus, contrary to the Attorney General's assertion, even when a prison prior is stayed and not executed, elimination of the prison prior reduces the potential sentence facing the defendant and therefore results in a lesser sentence than the one originally imposed. (*Mayberry*, *supra*, at pp. 674-675; *Christianson*, *supra*, at p. 312; *Saldana*, *supra*, at p. 1278.) Consequently, section 1172.75's resentencing provisions do not show that the section uses the word "impose" as a shorthand for impose and execute.

In addition, we find it unlikely that the Legislature silently intended to render only those prison priors that were imposed and executed legally invalid. The language of section 1172.75, subdivision (a) is unequivocal: As noted above, it states that "[*a*]*ny* sentence enhancement that was imposed prior to January 1, 2020" for a crime other than

7

a sexually violent offense "is legally invalid." (§ 1172.75, subd. (a), italics added.) In addition, elsewhere in section 1172.75, the Legislature carefully differentiated inmates based on how prison priors affected their sentences. Section 1172.75 requires the Department of Corrections to identify, and courts to resentence, all individuals in the Department's custody currently serving a "judgment that includes an enhancement described in subdivision (a)." (§ 1172.75, subd. (b), (c).) However, the section requires both the Department and the courts to identify and resentence individuals "who have served their base term and are currently serving a sentence based on the enhancement" (§ 1172.75, subd. (b)(1), (c)(1)), before identifying and resentencing "all other individuals" (§ 1172.75, subd. (b)(2), (c)(2)). If the Legislature had intended to exclude individuals with judgments including prison priors that were imposed but not executed, it likely would have done so expressly and unequivocally, not silently and ambiguously. (*Christianson*, *supra*, 97 Cal.App.5th at p. 313, rev.gr.)

Accordingly, in keeping with the majority of decisions considering the issue, we conclude that section 1172.75 should be interpreted according to the ordinary meaning of the word "impose" to cover all prison priors for crimes other than sexually violent offenses included by the sentencing court in an individual's judgment, without regard to whether punishment for those priors was executed.

### 3. The Dissent

Our dissenting colleague agrees that section 1172.75 applies where now-invalid prison priors were imposed but stayed. However, the dissent does not agree that section 1172.75 applies where, as in this case, a now-invalid prison prior was imposed but punishment was struck. We acknowledge that this result is somewhat counterintuitive and that the dissent's reluctance to reach it is understandable. However, the dissent does not explain how the word "impose" can be interpreted to apply to prison priors that were imposed and executed or stayed, but not to those that were imposed and punishment struck. In addition, we find the dissent's rationales for not applying section

8

1172.75 where punishment was struck to be inconclusive and therefore insufficient to justify carving out an exception to the ordinary meaning of "impose," particularly in light of the rule of lenity's overriding principle that, where the Legislature's intent cannot be determined, courts must prefer the interpretation that is most favorable to defendants.

In arguing that section 1172.75 should not apply where prison priors were imposed but punishment was struck, the dissent points out that the object of word "impose" in section 1172.75, subdivision (a) is "sentence enhancement." In particular, the dissent contends that an additional term of imprisonment or other increased punishment is one of the "requisites" of an enhancement. The dissent does not explain how this contention can be reconciled with its conclusion that section 1172.75 applies to prison priors that were imposed but stayed (and thus do not add any additional term of imprisonment unless the stay is lifted). In addition, while enhancements generally increase the punishment imposed on defendants, it is unclear why the dissent considers such increases an inherent and necessary aspect of an enhancement. As mentioned above, the Penal Code expressly recognizes that, where "the court has the authority . . . to strike or dismiss an enhancement," it may "strike the additional punishment for the enhancement." (§ 1385, subd. (b)(1).)

The dissent also points to the declaration of intent in the uncodified section of Sen. Bill 483. This section declares that the intent of the Legislature was to retroactively apply its amendments limiting prison priors under § 667.5, subdivision (b) "to all persons currently serving a term of incarceration" for repealed sentencing enhancements. (Stats. 2021, ch. 728, § 1.) The dissent infers from this declaration that the Legislature intended section 1172.75 to benefit only individuals incarcerated and serving sentences in which prison priors were imposed and executed or at least stayed. But there is nothing in this statement indicating a negative intent, that is, the Legislature intended to deny any benefit to individuals serving sentences in which prison priors were imposed but punishment was struck. Nor can it be assumed that Sen. Bill 483 had a single, exclusive purpose. As the

9

Supreme Court recently observed, "[l]egislation does not always—or even often—work this way." (*People v. Hardin* (2024) 15 Cal.5th 834, 853-854.) To the contrary, "[l]egislation is frequently ' "the product of multiple and somewhat inconsistent purposes that led to certain compromises." ' [Citations.]" (*Id.* at p. 854; see also *Virginia Uranium, Inc. v. Warren* (2019) 587 U.S. 761, 776 ["State legislatures are comprised of individuals who often pursue legislation for multiple and unexpressed purposes . . . ."].) In addition, the Legislature may choose to pursue a goal by adopting rules that are overinclusive but simple and easy to administer. As a consequence, it is reasonable to interpret section 1172.75 according to the ordinary meaning of the terms used even if doing so extends relief beyond those the Legislature expressly intended to benefit.

In addition, it is unclear that the benefits expressly conferred by section 1172.75 are limited to those identified in Sen. Bill 483's uncodified declaration of intent. Sen. Bill 483 states that the Legislative intended to retroactively apply previous restrictions on prison priors to "all persons currently serving a term of incarceration . . . for . . . repealed enhancements." (Stats. 2021, ch. 728, § 1.) But the bill appears to benefit others well. As noted above, while section 1172.75 gives priority to "individuals . . . currently serving a sentence based on [a now-invalid] enhancement" (§ 1172.75, subd. (b)(1), (c)(1)), it also grants resentencing to individuals serving a judgment that "includes an enhancement" that is now invalid (§ 1172.75, subd. (c); see also § 1172.75, subd. (c)(2) [providing resentencing for "all other individuals"]), which presumably includes individuals *not* currently serving a sentence based on a repealed enhancement. As "persons currently serving a term of incarceration . . . for . . . repealed enhancements" (Stats. 2021, ch. 728, § 1) may refer to the same group as "individuals . . . currently serving a sentence based on [a now-invalid] enhancement" (§ 1172.75, subd. (c)(1)), we cannot confidently conclude that Sen. Bill 483's declaration covers all the benefits that section 1172.75 expressly grants. For this reason as well, we cannot discern any intent to restrict the benefits of section 1172.75 in Sen. Bill 483's uncodified declaration.

10

The legislative history cited by the dissent is similarly inconclusive.  The dissent asserts that the Legislature focused on those individuals serving time attributable to now-invalid sentencing enhancements based on a committee analysis of the potential impact of Sen. Bill 483.  (See Sen. Com. on Appropriations, Analysis of Sen. Bill No. 843 (2021-2022 Reg. Sess.), as amended Mar. 3, 2021, p. 3.)  However, the committee may simply have been focusing on the most important aspect of the legislation in assessing its impact.  Consequently, we decline to infer from the report or from the Legislature's focus more generally that section 1172.75 was intended to cover only those individuals serving time attributable to now-invalid enhancements and nothing more.

Indeed, such an inference would conflict with other parts of the legislative history.  According to the dissent, where a prison prior for a crime other than a sexually violent offense was imposed but punishment was stricken, the prior is not imposed under section 1172.75, subdivision (a).  If that were the case, a group of prison priors that no longer could be imposed would *not* be "legally invalid" under that subdivision, and section 1172.75 would make the changes in the prison prior statute only partially retroactive.  That conclusion is inconsistent with the repeated—and unqualified—statements throughout the legislative history that Sen Bill 483 "applies retroactively to the repeal of sentence enhancements for prior prison or county felony terms . . . ."  (Sen. Rules Com. Floor Analysis, Off. Of Sen. Floor Analyses, Rep. on Sen. Bill No. 483 (2021-2022 Reg. Sess.) Sept. 9, 2021, p. 1; see also Assem. Com. on Appropriations, Rep. on Sen. Bill No. 483 (2021-2022 Reg. Sess.) Aug. 19, 2021, p. 1 ["This bill applies retroactively the repeal of sentence enhancements for prior prison or county felony terms . . . ."]; Assem. Com. on Public Safety, Rep. on Sen. Bill No. 483 (2021-2022 Reg. Sess.) July 13, 2021, p. 1 ["Applies the repeal of sentence enhancements for prior prison or county jail felony terms . . . ."]; Sen. Com. on Public Safety, Rep. on Sen. Bill No. 483 (2021-2022 Reg. Sess.) Apr. 27, 2021, p. 1 ["The purpose of this bill is to apply retroactively the repeal of sentence enhancements for prior prison or county jail felony terms . . . ." (boldface &

11

italics omitted)]; but see Sen. Com. on Appropriations, Rep. on Sen. Bill No. 483 (2021-2022 Reg. Sess.) May 20, 2021, p. 1 ["SB 483 would apply retroactively the repeal of sentence enhancements for prior prison felony terms . . . for individuals who currently are serving a term of incarcerations for these enhancements."].) Consequently, we cannot confidently infer from the legislative history that the Legislature did not intend section 1172.75 to apply where a now-invalid prison prior was imposed but punishment was stricken.

The dissent also argues that, when a prison prior is imposed but punishment is struck, the enhancement adds nothing to the sentence imposed. However, in some circumstances, when an enhancement has been imposed but punishment struck, "[t]he fact of the enhancement . . . remain[s]" and may adversely impact the defendant in other ways such as restricting the ability to accrue conduct credits or subjecting the defendant to additional punishment for future convictions. (*In re Pacheco* (2007) 155 Cal.App.4th 1439, 1444; see also *People v. Fuentes* (2016) 1 Cal.5th 218, 225 ["even if the *punishment* is struck, an enhancement finding could impact defendant in a future case"].) While the dissent argues that prison priors do not have these impacts, we are not so sure, and, even when punishment is struck, prison priors may have other impacts that we have not considered. In any event, it is not our role in interpreting statutes to make them fit the perceived policies underlying them perfectly in all instances; it is to ascertain the Legislature's intent, even if the legislation may be imperfectly drawn in some instances.

In declining to create an exception for prison priors that were imposed but punishment was struck, we are also cognizant of the rule of lenity. This rule " ' "generally requires that 'ambiguity in a criminal statute should be resolved in the favor of lenity, giving the defendant the benefit of every reasonable doubt on questions of interpretation.' " ' " (*People v. Reynoza* (2024) 15 Cal.5th 982, 1013.) The rule applies where two reasonable interpretations of a statute " ' " 'stand in relative equipoise.' " ' " (*Ibid*.) Thus, even if we were to conclude that the considerations raised by the dissent

12

provided an interpretation equally as strong as simply applying the ordinary meaning of the word "impose," the rule of lenity would demand that we follow the ordinary meaning.

## B. The Plea Agreement

The Attorney General argues that, if Espino is resentenced under section 1172.75 and his sentence is reduced, the prosecution is entitled to withdraw from its plea agreement with Espino. Reviewing this question of statutory interpretation de novo (*People v. Fox* (2023) 90 Cal.App.5th 826, 831), we disagree.

Here again, the Attorney General raises an issue on which published decisions are split and asks this court to follow the minority view. One decision from the First District has held that, where a trial court resentences a defendant under section 1172.75 and reduces the sentence beyond just striking now-invalid prison priors, the prosecution is entitled to withdraw from any plea agreement with the defendant. (*People v. Coddington* (2023) 96 Cal.App.5th 562, 571 (*Coddington*).) Other published decisions, including one from another division in the First District as well as a decision from the Fourth District issued last month, disagree. (See *People v. Hernandez* (2024) ___ Cal.App.5th ___ [2024 WL 3491774, pp. *4-*6] (*Hernandez*) [Fourth District, Division 3]; *People v. Montgomery* (2024) 100 Cal.App.5th 768, 777, review granted May 29, 2024, S284662 (*Montgomery*) [First District, Division 3]; *People v. Carter* (2023) 97 Cal.App.5th 960, 977 (*Carter*) [Fourth District, Division One).) We find the majority view more persuasive.

As a general rule, once a court approves a plea agreement, "the court may not proceed as to the plea other than as specified in the plea." (§ 1192.5, subd. (b); see also *People v. Prudholme* (2023) 14 Cal.5th 961, 973 [§ 1192.5 "generally constrains what a court may do when presented with a plea agreement between parties"].) Accordingly, "long-standing law limits the court's unilateral authority to strike an enhancement yet maintain other provisions of the plea bargain." (*People v. Stamps* (2020) 9 Cal.5th 685, 701.) However, plea agreements incorporate the state's reserve power to amend the law.

13

(*Doe v. Harris* (2013) 57 Cal.4th 64, 66.)  Accordingly, the Legislature may choose to enact statutes that reduce sentences imposed pursuant to plea agreements, which means that the impact of a change in the law on a plea agreement turns on legislative intent. (*Harris v. Superior Court* (2016) 1 Cal.5th 984, 991.)

Sen. Bill 483's uncodified section expressly states that the Legislature did not intend to permit prosecutors to rescind plea agreements based on resentencing under the statute:  "It is the intent of the Legislature that any changes to a sentence as a result of the act that added this section shall not be a basis for a prosecutor or court to rescind a plea agreement." (Stats. 2021, ch. 728, § 1.)  In light of this statement, most published decisions to consider resentencing under section 1172.75 have concluded that, where a defendant was sentenced based on a plea agreement and the sentence was reduced beyond striking invalid prison priors, the prosecution may not withdraw from the plea agreement for a sentence reduction resulting from the operation of section 1172.75, subdivision (d)(2). (*Hernandez*, ___ Cal.App.5th ___ [2024 WL 3491774, at p.*6]; *Montgomery*, *supra*, 100 Cal.App.5th at p. 776, rev.gr.; *Carter*, *supra*, 97 Cal.App.5th at pp. 973-974.)

In *Coddington*, *supra*, 96 Cal.App.5th 562, Division 1 of the First District reached a different conclusion.  *Coddington* focused on section 1172.75, subdivision (d)(2), which instructs trial courts to apply sentencing rules and other changes in the law reducing sentences or providing for judicial discretion "so as to eliminate disparity of sentences and to promote uniformity of sentencing."  (§ 1172.75, subd. (d)(2).) *Coddington* reasoned that the goal of eliminating disparity and promoting uniformity "would be thwarted" by an interpretation "categorically preventing prosecutors from withdrawing assent to a plea bargain for other changes reducing sentences that were part of the plea bargain." (*Coddington*, *supra*, 96 Cal.App.4th at p. 571.)  In addition, *Coddington* dismissed the Legislature's statement of intent in the uncodified section of Sen. Bill 483 on the ground that it was "clearly concerned with eliminating prison priors"

14

and thus does not apply to reductions in sentencing beyond eliminating prison priors. (*Coddington*, *supra*, at p. 571; see *id*. at p. 572.)  We respectfully disagree.  In addition to rendering "legally invalid" prison priors that may no longer be imposed (§ 1172.75, subd. (a)), section 1172.75 requires resentencing under current sentencing rules and "other changes in law" reducing sentencings (§ 1172.75, subd. (d)(2)) and in light of "postconviction factors" (§ 1172.75, subd. (d)(3)).  Nothing in Sen. Bill 483's statement of intent indicates that it was referring only to the first of these provisions when it declared, without qualification, that plea agreements may not be rescinded based on "any changes to a sentence as result of the act that added this section."  (Stats. 2021, ch. 728, § 1.)

### III.  Disposition

The order denying Espino's request for resentencing is reversed.  The matter is remanded to the trial court, which is directed to recall Espino's sentence and resentence him consistent with Penal Code section 1172.75 and current law.

_____
BROMBERG, J.

I CONCUR:

_____
GROVER, ACTING P.J.

*People v. Espino*
H051258

Lie, J., Dissenting:

The Legislature in enacting Penal Code section 1172.75[1] announced, "[I]t is the intent of the Legislature to retroactively apply . . . Senate Bill [No.] 136 of the 2019–[20]20 Regular Session to *all persons currently serving a term of incarceration . . . for these repealed sentence enhancements*." (Stats. 2021, ch. 728, § 1, p. 9076, italics added.) Although this statement of purpose is found in the uncodified preamble of Senate Bill No. 483, "[a]n uncodified section is part of the statutory law." (*Carter v. California Dept. of Veterans Affairs* (2006) 38 Cal.4th 914, 925.) The preamble "do[es] not confer power, determine rights, or enlarge the scope of a measure, [but it] properly may be utilized as an aid in construing a statute." (*Ibid.*; *People v. Canty* (2004) 32 Cal.4th 1266, 1280 [uncodified findings and statements of intent are "not conclusive" but are "entitled to consideration"].) I read the Legislature's preamble to Senate Bill No. 483 as meaning that it intended to extend relief to people serving sentences that were, whether actually or at least theoretically, subject to an additional one-year term of incarceration for a prior prison term pleaded and proven under former section 667.5, subdivision (b) (section 667.5(b)). I read the Legislature's specification in section 1172.75, subdivision (a) of "[a]ny sentence enhancement that was imposed" for a now-invalid prior prison term enhancement as the prerequisite for the trial court's duty under subdivision (c) to recall and resentence. And because I do not read the requirement of an "imposed" sentence enhancement to be satisfied where the enhancing punishment was stricken, I respectfully dissent.

" 'By definition, a sentence enhancement is "an additional term of imprisonment added to the base term." ' " (*People v. Gonzalez* (2008) 43 Cal.4th 1118, 1124 (*Gonzalez*); Cal. Rules of Court, rule 4.405(5).) It is this additive character of the term of imprisonment that to me appears integral to imposition of a sentence enhancement. So

---

[1] Unspecified statutory references are to the Penal Code.

the concept of a sentence enhancement being "imposed" when its punishment was stricken is not one I claim to comprehend. For enhancements, the California Supreme Court has identified two potential meanings of "impose": "[T]he word 'impose' [can apply] to enhancements that are 'imposed and then executed' as well as those that are 'imposed and then stayed.' " (*Gonzalez*, at p. 1125, italics omitted.) Under either meaning, imposition of the enhancement adds to the defendant's sentence, whether actually (because the court executed it) or potentially (because the court stayed its execution pending some contingency). "When a punishment is stayed, as opposed to stricken, the trial court retains the ability to lift the stay and impose the term under certain circumstance, such as if an alternately imposed term is invalidated." (*People v. Christianson* (2023) 97 Cal.App.5th 300, 312, review granted Feb. 21, 2024, S283189 (*Christianson*).)[2] But when the law otherwise prescribes an additional term of imprisonment, a trial court that elects to strike that additional term of imprisonment has not imposed it—not even conditionally, as would be the case when a court elects to stay the additional term—under either of the *Gonzalez* court's alternative definitions. (See *People v. Yartz* (2005) 37 Cal.4th 529, 538 [noting that the Legislature " 'is deemed to be aware of statutes and judicial decisions already in existence' "].)

The *Gonzalez* court did not attribute a technical legal meaning to "impose," but the ordinary meaning of a transitive verb "cannot be artificially isolated from" its object— here, the sentencing enhancement. (Cf. *People v. Moses* (2020) 10 Cal.5th 893, 907.) A sentencing enhancement being an additional term of imprisonment added to a base term (Cal. Rules of Court, rule 4.405(5)), striking that additional term of imprisonment means

---

[2] As the majority observes, *ante,* page 4, section 1172.75, subdivision (d)(1) requires resentencing to "result in a lesser sentence than the one originally imposed." If eliminating a stayed enhancement "provide[s] some [sentencing] relief to the defendant by eliminating" the potential that a stayed punishment will someday be executed (*Christianson*, *supra*, 97 Cal.App.5th at p. 312, rev. granted), eliminating an enhancement for which the court had already stricken the punishment provides none.

the additional term does not apply to the defendant at all. I see this as the opposite of the additional term being " 'ma[de] . . . compulsory, obligatory or enforc[ea]ble.' " (Maj. opn., *ante*, at p. 6, quoting Webster's 3d New Internat. Dict. (1993) p. 1136, col. 1.)

The gap between my reading and the majority's of "[a]ny sentence enhancement that was imposed" (§ 1172.75, subd. (a)) derives from the three requisites of "an additional term of imprisonment added to the base term" (Cal. Rules of Court, rule 4.405(5) [defining sentence "[e]nhancement"]). A sentence enhancement depends on (1) the legislative authorization or mandate for the additional term of imprisonment (here, section 667.5(b)); (2) the legally operative facts pleaded and proven (here, proof of a separate prison term served for any felony); and (3) application of the increased punishment prescribed upon proof of those operative facts (the additional one-year term). Of these three essentials of an enhancement, the Legislature enacts, prescribes, or repeals the first. (See Assem. Com. on Public Safety, Analysis of Sen. Bill No. 483 (2021–2022 Reg. Sess.) as amended July 7, 2021, p. 2; Stats. 2021, ch. 728, § 1, p. 9076 [referring to prior legislation as "repealed sentence enhancements"]; *People v. Murphy* (2001) 25 Cal.4th 136, 158 [referring to repeal of sentencing provision, former § 667.71].) The trier of fact finds true (or not true) the second. (See *In re Pacheco* (2007) 155 Cal.App.4th 1439, 1444 (*Pacheco*) [the "fact of the enhancement"].) And the sentencing court imposes (and then executes or stays) or else strikes the third. (*Gonzalez*, *supra*, 43 Cal.4th at p. 1125 [the "additional term of imprisonment"]; § 1385, subd. (b)(1); cf. § 1203.1, subd. (a) ["The court, or judge thereof, . . . may suspend the imposing or the execution of the sentence"].) When a sentencing court pronounces judgment—that determinant of section 1172.75 eligibility—the first and second of these have already been settled, leaving the court to decide only whether to impose the additional term. At bottom, "impose" or "imposition" in the criminal context is the language of sentencing, of pronouncing the term or terms of imprisonment that a person's conduct and history merit. (*Gonzalez*, at p. 1125.) It is not the language of factfinding

3

(or of lawmaking).  So the adjudicated fact of a prior prison term is not what I would consider an "enhancement that was imposed."  (§ 1172.75, subd. (a).)

That the fact of the former section 667.5(b) enhancement remains on a defendant's record after the associated punishment is stricken adds nothing to the sentence imposed. It detracts nothing from the availability of conduct credits under section 2933—unlike an enhancement for inflicting great bodily injury under section 12022.7, for example.  (Cf. *Pacheco*, *supra*, 155 Cal.App.4th at p. 1444.)  Unlike a great bodily injury enhancement, or a gang enhancement under section 186.22, the fact of a prior prison term enhancement portends nothing for a future sentence.  (Cf. *People v. Fuentes* (2016) 1 Cal.5th 218, 225– 226.)  And even if a now-invalid enhancement under former section 667.5(b) could be said to possess some unidentified potential to affect a future sentence or trigger another collateral consequence of some kind, this would be beyond the ambit of Senate Bill No. 483.[3]  Had collateral consequences from the fact of a prior prison term enhancement been among the Legislature's concerns, I see no reason for the Legislature to have limited those eligible for relief to those currently serving sentences.

After all, the Legislature knows how to craft retroactive relief more broadly—to dismiss convictions after both finality of judgment and completion of sentence, for example, and to seal records of sentences already served.  (See, e.g., Health & Saf. Code, § 11361.8, subd. (e).)  Here, it could have ended its statement of intent after "all persons currently serving a term of incarceration" or even "all persons."  The intent expressed in

---

[3] Unlike the infliction of great bodily injury or conduct for the benefit of a criminal street gang, proving the fact of the prior prison term enhancement would also be no more burdensome for the prosecution in the future than proving the prior prison term itself, should the need arise.  Each requires no more and no less than certified court records rather than witness testimony.  (See § 1170, subd. (b)(3); see also *Apprendi v. New Jersey* (2000) 530 U.S. 466, 490 [exempting the fact of a prior conviction from the Sixth Amendment requirement that any fact that increases the statutory maximum penalty must be submitted to a jury and proven beyond a reasonable doubt].)

4

the uncodified preamble, however, does not extend to all persons pleaded and proven under former section 667.5(b) to have served a prior prison term, or even to the subset who are still serving a term of incarceration, but to the narrower subset having a term of incarceration *imposed* under the now-repealed provisions of former law.  (See § 1172.75, subd. (a) ["[a]ny sentence enhancement that was imposed" under former § 667.5(b)]; see also § 1172.75, subds. (b) ["currently serving a term for a judgment that includes an *enhancement described in subdivision (a)*" (italics added)] & (c) ["[i]f the court determines that the current judgment includes *an enhancement described in subdivision (a)*" (italics added)].)[4]  Reading "enhancement that was imposed" in the context of Senate Bill No. 483's uncodified statement of intent, no resort to additional legislative history is needed.  "Where, as here, legislative intent is expressed in unambiguous terms, we must treat the statutory language as conclusive; 'no resort to extrinsic aids is necessary or proper.' "  (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1119–1120.)

Even if one may discern ambiguity in the stated legislative intent, I do not believe the legislative history supports a different reading:  that history reflects the Legislature's consistent focus on those serving time attributable to those enhancements it contemplated applying retroactively.  To gauge the potential impact of the bill, for example, the Legislature specifically considered what could be determined of how many people were "serving terms of sentence enhancements":  "While it is not presently known how many individuals currently are serving a term of incarceration at the local level that includes

_____

[4] I do not view the Legislature's phasing of relief under section 1172.75 as bearing on the statutory construction.  (Maj. opn., *ante*, at p. 7.)  My reading of subdivisions (b)(1) and (c)(1) of section 1172.75 is that the Legislature prioritized those people currently serving a sentence based on a now-invalid enhancement "who have served their base term and any other enhancements" over other defendants who are still serving time for their base term or other still-valid enhancements but who have a one-year additional term under former section 667.5(b) at least stayed if not executed.

5

one of the relevant sentence enhancements, . . . individuals in CDCR custody were serving 313 terms of sentence enhancements under Health and Safety Code section 11370.2 and 18,598 terms of sentence enhancements under Penal Code section 667.5, subdivision (b). The department would be required to examine the case file for each of these enhancements to determine if they are eligible for the relief and [forward them] to the courts pursuant to this measure." (Sen. Com. on Appropriations, Analysis of Sen. Bill No. 483, as amended Mar. 3, 2021, p. 3.)

The Legislature could have considered extending some form of relief for those who—despite ultimately experiencing no additional punishment for the fact of their prior prison term—had needed to factor the threat of such additional punishment in deciding whether to proceed to trial, negotiate a stipulated sentence, or plead "open" to the full breadth of the trial court's deferentially reviewed sentencing discretion. The Legislature could have used the ubiquity and demonstrable disparate impact of one-year prior prison term enhancements—imposed and executed, imposed and stayed, or simply stricken—as the fulcrum for a broader decarceral endeavor, to leverage maximum retroactive effect from intervening sentencing reforms (otherwise limited in retroactivity under *In re Estrada* (1965) 63 Cal.2d 740) across the largest possible population. But in declaring "legally invalid" certain of those former section 667.5(b) enhancements that were "imposed prior to January 1, 2020" (§ 1172.75, subd. (a)) and in expressing its intent to retroactively apply Senate Bill No. 136 to "persons currently serving a term of incarceration . . . for [this] repealed sentence enhancement[]," the Legislature in my view has not yet done so.

I would therefore affirm the trial court's order denying defendant Jack Espino's request for resentencing.

_____
LIE, J.

*People v. Espino*
H051258

| | |
|---|---|
| Trial Court: | Santa Clara County<br>Superior Court No.:  C1761121 |
| | |
| Trial Judge:<br>The Honorable Kenneth P. Barnum | The Honorable William J. Monahan |
| | |
| Attorney for Defendant and Appellant<br>Jack Espino: | Robert L.S. Angres<br>under appointment by the Court<br>of Appeal for Appellant |
| | |
| Attorneys for Plaintiff and Respondent<br>The People: | Rob Bonta<br>Attorney General<br><br>Lance E. Winters,<br>Chief Assistant Attorney General<br><br>Jeffrey M. Laurence,<br>Senior Assistant Attorney General<br><br>Eric D. Share,<br>Supervising Deputy Attorney General<br><br>Andrew Haney,<br>Deputy Attorney General |

*People v. Espino*
H051258